IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL ACTION NO.: 1:19-cv-00190

| | |
|---|---|
| ANGELA EARLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| | ) |
| FORGA CONTRACTING, INC. and WILLIAM SCOTT FORGA | ) |
| | ) |
| Defendants. | ) |

Plaintiff, Angela Earls ("Plaintiff" or "Earls"), by and through counsel, brings this action for violations of (1) The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); (2) the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-241 *et. seq.*; (3) North Carolina Public Policy; and (4) the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§95.25.1 *et. seq.* and alleges, upon information and belief, as follows:

### THE PARTIES

1. Angela Earls is an adult individual who is a resident of Waynesville, North Carolina.

2. Defendant Forga Contracting, Inc. ("FCI") is a domestic corporation registered and in good standing in the State of North Carolina located at 611 Big Cove Road, Waynesville, NC 28786.

3. William Scott Forga ("Forga") is the majority shareholder of FCI and holds the position of President.

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 over the subject matter of the claims brought under the FLSA for unpaid overtime.

5. The claims for violations of the NCWHA, REDA, and North Carolina Public Policy are based on the statutory and common law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claims – all claims arise out of Defendants' unlawful policies and practices related to Plaintiff's employment with Defendants.

6. This Court has personal jurisdiction because Defendants conduct substantial business in Haywood County, North Carolina, which is located within this judicial district.

7. Venue is proper in this judicial district because Defendants have substantial business contacts in this district and because the unlawful acts alleged herein occurred in Haywood County located within this judicial district.

8. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## COVERAGE ALLEGATIONS

9. FCI is an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. 203(d).

10. Forga is an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d). In this capacity, Forga is involved in the day-to-day business operations of FCI. Forga has the authority to sign on corporate checking accounts, including payroll accounts, and the

authority to make decisions regarding wage and hour issues, including the decision to withhold overtime compensation from Plaintiffs. At all relevant times, Forga acted and had responsibility to act on behalf of, and in the interests of FCI in devising, directing, implementing and supervising the wage and hour practices and policies relating to employees, including the off-the-clock issues raised in this lawsuit.

11. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

12. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

13. Earls was an employee of Defendants within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

14. At all times hereinafter mentioned, Plaintiff was an individual employee who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

15. At all times hereinafter mentioned, FCI has been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

16. At all times hereinafter mentioned, Forga has been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

17. At all times hereinafter mentioned, Plaintiff was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. § 95-25.2(4).

18. At all times hereinafter mentioned, Forga has been a "person" within the meaning of N.C. Gen. Stat. § 95-240(1).

19. At all times hereinafter mentioned, FCI has been a "person" within the meaning of N.C. Gen. Stat. § 95-240(1).

## PLAINTIFF'S FACTUAL ALLEGATIONS

20. Defendants provide construction services to third parties primarily involving excavation for commercial developments.

21. Plaintiff began her employment with Defendants on or about April 2, 2018, as a dump truck driver. Plaintiff's employment was at-will.

22. Plaintiff's primary job duties involved commercial driving services.

23. At all times Plaintiff met or exceeded Defendants' legitimate employment expectations.

24. At all relevant times, Plaintiff was a nonexempt employee within the meaning of the FLSA and eligible for overtime compensation for all work performed in excess of 40 hours in a workweek.

25. Defendants employed Plaintiff from April 2, 2018, until July 4, 2018, during the FLSA's three-year statutory period preceding the filing of this complaint.

26. Plaintiff was paid on a weekly basis.

27. At all times relevant to this lawsuit, Defendants paid Plaintiff an hourly rate of $15 an hour.

28. During Plaintiff's employment, she was required to report to FCI's "home yard" in Waynesville, North Carolina at approximately 6:30 a.m. the morning of a workday and drive a company dump truck to various work sites for the day. The work sites varied in location and regularly required Plaintiff to drive Defendants' dump truck between 10 minutes and 2 hours to a worksite. After Plaintiff finished dumping the last load at the worksite, she was required to drive Defendants' dump truck back to the home yard.

29. Plaintiff estimates that during the time she was employed with Defendants she was required to drive Defendants' dump truck from excavation sites to FCI's home yard approximately 49 times.

30. Defendants provided Plaintiff with a thirty-minute unpaid lunch break. However, Defendants regularly required Plaintiff to work through her lunch break. Defendants failed to compensate Plaintiff for work time when she was required to work through her lunch break.

31. Defendants failed to compensate Plaintiff for any of the work time she spent driving the company truck back to the home yard from construction sites.

32. During the three months that Defendants employed Plaintiff she worked in excess of 40 hours in multiple weeks including, but not limited to, the pay period beginning on May 18, 2018, and ending on May 24, 2018.

33. Defendants did not accurately track and record the hours worked by Plaintiff as required by the FLSA.

34. Defendants did not timely pay Plaintiff for the overtime hours she worked during the three-year period prior to the filing of this lawsuit.

35. Defendants failed to pay Plaintiff an overtime premium for all hours worked in excess of 40 each workweek during the periods described above.

36. Defendants knew, or should have known, that Plaintiff worked unpaid overtime hours during the FLSA's statutory time period because Defendants required Plaintiff to drive their dump truck from worksites to the home yard after the last haul at a worksite.

37. On or about June 14, 2018, Plaintiff fell in a truck stop restroom while in the course and scope of her employment. Angela Franklin ("Franklin"), an employee of FCI and Forga's secretary, came into the bathroom after the fall and cleaned up Plaintiff's blood.

38. Shortly after Plaintiffs' fall, Franklin told Plaintiff that she called Forga on the phone and informed Forga about her fall. Forga then instructed Franklin to allow Plaintiff to drive an empty dump truck to the hospital because Plaintiff's truck was full of dirt.

39. After her fall, Plaintiff drove to a hospital to seek treatment for her injuries. When Plaintiff returned to work that day, Forga said that Plaintiff "looked high." Plaintiff responded, "It's no wonder, I took a pretty hard fall."

40. Starting in or about mid-late June and after the June 14 fall, Plaintiff began telling Franklin that she was told by multiple persons that her injuries should be covered under Defendants' Workers' Compensation insurance. Franklin acknowledged Plaintiff's statements but did not address them.

41. On or about July 2, 2018, Plaintiff inquired with Forga about Workers' Compensation claims for the injuries she sustained in the fall described in paragraph 37. Forga replied that he did not know what Workers' Compensation is but admonished Plaintiff stating that Worker's Compensation is a "free ride" and that "people make claims all the time and there's nothing wrong with them." Plaintiff responded by reminding Forga that she had fallen previously. Forga replied that he would ask his accountant and "let [her] know."

42. On July 4, 2018, Defendants terminated Plaintiff's employment. At the time of Plaintiff's termination, Forga knew that Plaintiff had sustained injuries from a fall while at work, had inquired multiple times about Workers' Compensation in relation to her fall, and thus he anticipated that Plaintiff intended to file a good faith Workers' Compensation claim and terminated her employment as a result.

43. On July 5, 2018, Plaintiff exercised her rights under North Carolina law and filed a Workers' Compensation claim with the North Carolina Industrial Commission for the injuries she sustained in the June 14 fall at work.

44. Following the termination of Plaintiff's employment, Defendants failed to pay Plaintiff her earned wages for the time she spent working through lunch breaks and driving Defendants' dump truck from worksites to FCI's home yard.

### **Plaintiff 's First Cause of Action**

### **(Violation of the FLSA – Failure to Pay Overtime)**

45. Plaintiff incorporates by reference paragraphs 1 through 44 of her Complaint.

46. Defendants violated the FLSA by failing to timely pay all overtime wages earned by Plaintiff.

47. Defendants violated the FLSA by failing to pay Plaintiff an overtime premium rate of pay for all hours worked in excess of forty in a workweek.

48. Defendants violated the FLSA by failing to comply with the timekeeping and recordkeeping provisions of the FLSA.

49. Defendants' violation of the FLSA was willful.

## Plaintiff's Second Cause of Action

### (Violation of REDA)

50. Plaintiff incorporates by reference paragraphs 1 through 49 of her Complaint.

51. Defendants' termination of Plaintiff was in retaliation of her anticipated exercise of her rights by filing or causing to be filed a claim or complaint and initiating a proceeding with respect to Chapter 97 of the North Carolina General Statutes, (the North Carolina Workers Compensation Act), N.C. Gen. Stat. § 97-1 *et. seq.*, and by exercising other rights afforded by the Workers' Compensation Act, in violation of N.C. Gen. Stat. § 95-241(a).

52. Defendants' termination of Plaintiff's employment on July 4, 2018, was a "retaliatory action" within the meaning of N.C. Gen. Stat. § 95-240(2).

53. In or about August 2019, Plaintiff initiated a complaint with the North Carolina Department of Labor (NCDOL) alleging unlawful retaliation and discrimination against her for asserting her rights pursuant to REDA.

54. In accordance with N.C. Gen. Stat. § 95-242(c) Plaintiff made a written request to the Commissioner of Labor for a right-to-sue letter after 90 days following the filing of the complaint where the Commissioner had not issued a notice of conciliation failure and had not commenced an action pursuant to N.C. Gen. Stat. § 95-242.

55. The NCDOL issued Plaintiff a Right-To-Sue letter on April 25, 2019 and an Amended Right-To-Sue letter on June 5, 2019.

56. This action is filed within 90 days of April 25, 2019 pursuant to N.C. Gen. Stat. § 95-243(b).

57. As a result of Defendants' violation of N.C. Gen. Stat. § 95-240 *et. seq.*, Plaintiff has suffered, and continues to suffer damages representing lost wages, lost benefits, and other

8

economic losses proximately caused by the retaliatory action or discrimination against Plaintiff by defendants.

58. Defendant's violation of REDA was willful and entitles Plaintiff to treble damages.

## Plaintiff's Third Cause of Action

### (Wrongful Discharge in Violation of Public Policy)

59. Plaintiff incorporates by reference paragraphs 1-58 of her Complaint.

60. Defendants' termination of Plaintiff was a wrongful discharge in violation of North Carolina public policy protecting individuals against retaliatory discharge for asserting their legal rights and/or asserting claims or complaints permitted under state and federal law, as set forth in N.C. Gen. Stat. 95-240 et. seq.

61. Defendants' conduct in discharging plaintiff was taken with malice or reckless indifference to Plaintiff's rights.

62. As a result of Plaintiff's wrongful discharge Plaintiff has sustained and will continue to sustain damages.

## Plaintiff's Fourth Cause of Action

### (Violation of NCWHA)

63. Plaintiff incorporates by reference paragraphs 1-62 of her complaint.

64. Plaintiff's claims arise from Defendants' policy and practice of failing to pay earned wages in violation of N.C. Gen. Stat. §§ 95-25.6 and 95-25.7.

65. Defendants failed to timely pay all wages earned by Plaintiffs on their regularly scheduled paydays, including the next regular payday following the termination of Plaintiffs' employment.

66. Defendants' conduct was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

a) An Order pursuant to Section 16(b) of the FLSA finding Defendants jointly and severally liable for unpaid overtime wages due to Plaintiffs and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff;

b) An Order pursuant to N.C. Gen. Stat. § 95-25.22 finding Defendants jointly and severally liable for unpaid wages due to Plaintiffs and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs;

c) An order finding that Defendants' unlawful termination of Plaintiff violated § 95-240 *et. seq* and ordering Defendants to reinstate Plaintiff to the same position she held before the retaliatory termination, holding Defendants jointly and severally liable for compensatory damages, and trebling the compensatory damages on account of Defendants' willful violation pursuant to N.C. Gen. Stat. § 95-243(c).

d) An Order finding that Defendants' unlawful termination of Plaintiff violated North Carolina Public Policy and holding Defendants jointly and severally liable for compensatory and punitive damages;

e) An Order awarding the costs of this action;

f) An Order awarding reasonable attorneys' fees;

g) A Declaration and finding by the Court that Defendants willfully violated provisions of the FLSA by failing to comply with the overtime requirements of the FLSA;

h) A Declaration and finding by the Court that Defendants willfully violated provisions of the NCWHA by failing to comply with the overtime requirements of the NCWHA;

i) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

j) An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Respectfully submitted,

/s/ Jason S. Chestnut
Jason S. Chestnut NCSB #52066
Philip J. Gibbons, Jr., NCSB #50276
Craig L. Leis, NCSB #48582

GIBBONS LEIS, PLLC
14045 Ballantyne Corporate Place, Ste 325
Charlotte, North Carolina 28277
Telephone: (704) 612-0038

E-Mail: jason@gibbonsleis.com
phil@gibbonsleis.com
craig@gibbonsleis.com