## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:19-cv-00190-MR-WCM

| | | |
|---|---|---|
| ANGELA EARLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| FORGA CONTRACTING, INC. and | ) | |
| WILLIAM SCOTT FORGA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Entry of Default Judgment [Doc. 8].

## I.      BACKGROUND

On June 6, 2019, the Plaintiff Angela Earls (the "Plaintiff") brought this action against Forga Contracting, Inc. ("FCI") and its sole owner, William Forga ("Forga" and collectively the "Defendants"), asserting claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§95.25.1 et seq.; the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-241 et seq.; and North Carolina Public Policy. [Doc. 1].

The Defendants were served on July 22, 2019, and the Plaintiff filed affidavits of service with the Court on July 20, 2019. [Docs. 3, 4]. On September 24, 2019, the Plaintiff moved for Entry of Default against the Defendants for failing to plead or otherwise defend this action. [Doc. 5]. On the same date, the Clerk entered a default against the Defendants. [Doc. 6]. On December 12, 2019, the Court entered an Order instructing the Plaintiff to file an appropriate motion or otherwise take further action with respect to the Defendants. [Doc. 7]. On December 26, 2019, the Plaintiff filed a Motion for Entry of Default Judgment [Doc. 8]. The Court held a hearing on the Plaintiff's Motion on March 12, 2020.

## II.    STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Once a defendant has been defaulted, the plaintiff may then seek a default judgment. If the plaintiff's claim is for a sum certain or can be made certain by computation, the Clerk of Court may enter the default judgment. Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the Court for a default judgment. Fed. R. Civ. P. 55(b)(2).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). A defendant, however, "is not held . . . to admit conclusions of law." Ryan, 253 F.3d at 780 (quoting Nishimatsu, 515 F.2d at 1206). The Court, therefore, must determine whether the facts as alleged state a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

"If the court finds that liability is established, it must then turn to the determination of damages." See Ryan, 253 F.3d at 780–81. The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages. S.E.C. v. Lawbaugh, 359 F.Supp.2d 418, 422 (D. Md. 2005).

## III. DISCUSSION

### 1. NCWHA and FLSA Claims for Unpaid Wages

The Plaintiff claims that she was not paid for all of the hours she worked under the NCWHA and was not paid overtime for some of those hours under the FLSA. [Doc. 1 at 7, 9-10]. Specifically, the Plaintiff claims that the Defendants did not pay her for the time she spent driving her truck back to a

central location after each workday and did not pay her for working through lunch breaks on several occasions.  [Id.].

Under the FLSA, time spent by an employee on a "principal activity, such as travel from job site to job site during the workday, must be counted as hours worked."  29 C.F.R. §§ 785.6-11.  Moreover, if an employee is required or permitted to perform any duties during a time designated for eating, the time is considered compensable time and the employer is required to compensate the employee for this work time.  See 29 C.F.R. § 785.19.  Under the NCWHA, an "employer" is liable for an employee's unpaid wages, liquidated damages, costs, and reasonable attorneys' fees.  N.C. Gen. Stat. § 95–25.22.  "In interpreting the NCWHA, North Carolina courts look to the FLSA for guidance."  Garcia v. Frog Island Seafood, Inc., 644 F.Supp.2d 696, 707 (E.D.N.C. 2009) (citing Laborer's Int'l Union of N.A. v. Case Farms, Inc., 127 N.C. App. 312, 488 S.E.2d 632, 634 (1997)).

The Plaintiff began working for the Defendants as a truck driver on April 2, 2018.  [Doc. 1 at ¶ 21].  She was paid $15 an hour.  [Id. at ¶ 27].  As part of that job, the Plaintiff reported to a central yard to pick up a truck, drove that truck to various work sites throughout the day, and returned that truck to the central yard at the end of the day.  [Id. at ¶ 28].  The Plaintiff claims that she was never paid for the time she spent driving the truck back to the central

yard at the end of each day.  [Id. at ¶ 31].  She states that she was required to drive the truck back to the central yard 49 times during the course of her employment and estimates that the average length of the drive back to the central yard was 1.5 hours.  [Id. at ¶ 29; Doc. 9 at 8].  As such, the Plaintiff claims she was not paid for 73.5 hours that she spent driving the truck back to the central yard.  [Id.].

The Plaintiff also was provided with a thirty-minute unpaid lunch break during the day.  [Doc. 1 at ¶ 30].  She claims that she had to work through her lunch break regularly and was never paid for that time.  [Id.].  The Plaintiff states that she worked through her full thirty-minute lunch break 15 times and worked through half of her lunch break 5 times.  [Doc. 9 at 8].  As such, the Plaintiff claims that she was not paid for 8.75 hours that she spent working through her lunch breaks.  [Id.].

In total, the Plaintiff claims that she was not paid for 82.25 hours that she worked.  [Doc. 9-1 at 2].  Of those hours, the Plaintiff claims that 49.25 hours were regular hours to be paid at her regular rate of $15.00 per hour under the NCWHA and that 33 hours were overtime hours to be paid at an overtime rate of $22.50 per hour under the FLSA.  [Id. at 2-3].  Accordingly, the Plaintiff claims that she should recover $738.75 in regular unpaid wages under the NCWHA and $742.50 in overtime unpaid wages under the FLSA.

[Doc. 9 at 13]. That Plaintiff also claims that she is entitled to liquidated damages in the same amounts. [Id.].

The Plaintiff's allegations, taken as true by virtue of the Defendants' default, sufficiently state claims for unpaid wages under the FLSA and the NCWHA. Under the FLSA, time spent by an employee on a "principal activity, such as travel from job site to job site during the workday, must be counted as hours worked." 29 C.F.R. §§ 785.6-11. Moreover, if an employee is required or permitted to perform any duties during a time designated for eating, the time is considered compensable time and the employer is required to compensate the employee for this work time. See 29 C.F.R. § 785.19. As such, the Plaintiff should have been paid for the hours she spent driving the truck back to the central yard and the hours she spent working through lunch breaks under the FLSA and the NCWHA.

The Plaintiff brings her FLSA and NCWHA claims against both FCI and Forga. Under the NCWHA, only an "employer" is liable for an employee's unpaid wages, liquidated damages, costs, and reasonable attorneys' fees. N.C. Gen. Stat. § 95–25.22. Courts have found that individuals and corporations that simultaneously meet the definition of employers can be held jointly and severally liable for these violations. Miller v. Colorcraft Printing Co., No. 3:03 CV 51-T, 2003 WL 22717592, at *5 (W.D.N.C. Oct.

16, 2003) (NCWHA); <u>Donovan v. Agnew</u>, 712 F.2d 1509, 1511 (1st Cir. 1983) (FLSA) (stating that "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."); <u>see</u> <u>also</u> <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 141 (2d Cir. 1999) (FLSA).  As such, "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions" creating the underlying liability, can be held personally liable jointly and severally with the corporate entity.  <u>Donovan</u>, 712 F.2d at 1514 (citing <u>Wirtz v. Pure Ice Co.</u>, 322 F.2d 259, 263 (8th Cir. 1963)).  For example, the Second Circuit in <u>Herman</u> found that a corporation's chairman of the board could be held liable for violations of the FLSA along with the corporation he led because both qualified as "employers" under the FLSA.  172 F.3d at 132.

Under the FLSA and the NCWHA, courts use the "economic reality" test to determine whether an individual qualifies as an employer.  <u>Id.</u>; <u>Kerr v. Marshall Univ. Bd. of Governors</u>, 824 F.3d 62, 83 (4th Cir. 2016).  Relevant factors under that test "include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Kerr, 824 F.3d at 83 (citing Herman, 172 F.3d at 139).

Here, the Plaintiff alleges that

> Forga is involved in the day-to-day business operations of FCI. Forga has the authority to sign on corporate checking accounts, including payroll accounts, and the authority to make decisions regarding wage and hour issues, including the decision to withhold overtime compensation from Plaintiffs. At all relevant times, Forga acted and had responsibility to act on behalf of, and in the interests of FCI in devising, directing, implementing and supervising the wage and hour practices and policies relating to employees, including the off-the-clock issues raised in this lawsuit.

[Doc. 1 at 2]. Those allegations, taken as true because of the Defendants' default, demonstrate that both FCI and Forga exercised sufficient control to be considered employers under the FLSA and the NCWHA, and thus can be held jointly and severally liable.

Having established that the Defendants are liable for the Plaintiff's unpaid wages, the Court turns to the Plaintiff's claims for liquidated damages. The Plaintiff's claims for liquidated damages are governed by 29 U.S.C. § 216(b) of the FLSA and § 95-25.22 of the NCWHA. Section 216(b) states that an "employer who violates . . . this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation

. . . and in an additional equal amount as liquidated damages." Section 95-25.22 states that "[i]n addition to the [unpaid wages] awarded . . . the court shall award liquidated damages in an amount equal to the amount found to be due."[1] Because the Plaintiff's allegations, taken as true by virtue of the Defendants' default, establish that the Defendants violated the FLSA and the NCWHA, an award of liquidated damages in the same amount is appropriate here. 29 U.S.C. § 216(b); see also N.C. Gen. Stat. § 95–25.22. As such, the Plaintiff will recover from the Defendants $738.75 in regular unpaid wages and $738.75 in liquidated damages under the NCWHA and $742.50 in overtime unpaid wages and $742.50 in liquidated damages under the FLSA.

### 2.    REDA and WDPP Claims for Back Pay

The Plaintiff next claims that the Defendants terminated her employment in retaliation for exercising her rights under the North Carolina Workers' Compensation Act, N.C. Gen. Stat. § 97-1 et seq. after she was injured while working. The Plaintiff claims that the Defendants' actions

---

[1] Under the NCWHA and the FLSA, an employer can avoid paying liquidated damages by overcoming a "plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." Garcia v. Frog Island Seafood, Inc., 644 F. Supp. 2d 696, 712 (E.D.N.C. 2009) (citing Brinkley–Obu v. Hughes Training, 36 F.3d 336, 357 (4th Cir. 1994)). The Defendants, however, have failed to carry that burden by virtue of their default.

constitute a violation of the REDA and a Wrongful Discharge in Violation of Public Policy. ("WDPP"). Those claims involve the same conduct, so the Plaintiff can recover damages only for her REDA or her WDPP claim. See Driskell v. Summit Contracting Grp., Inc., 325 F. Supp. 3d 665, 678 (W.D.N.C. 2018), appeal dismissed, No. 18-1855, 2018 WL 7140958 (4th Cir. Nov. 6, 2018) (stating that a "Plaintiff may elect to recover under either [her] REDA claim or [her] WDPP claim, but not both, so as to avoid running afoul of the prohibition of double recovery."). At the hearing on the Plaintiff's Motion for Default Judgment, the Plaintiff's counsel notified the Court that she elects to proceed on her REDA claim.

Under the REDA, "it is unlawful for an employer to take adverse employment action against an employee who, in good faith, files a claim or complaint, initiates an inquiry, investigation, inspection, proceeding or other action, or testify provide information to any person with respect to" the North Carolina Worker's Compensation Act. N.C. Gen. Stat. § 95-241(a)(1)(a). For a plaintiff to establish a *prima facie* case under the REDA, she must show that (1) [s]he exercised [her] rights to engage in protected activity . . . ; (2) [s]he suffered an adverse employment action; and (3) a causal connection exists between the exercise of the protected activity and the alleged retaliatory action." Nguyen v. Austin Quality Foods, Inc., 974 F.Supp.2d 879,

882-83 (E.D.N.C. 2013).  Once the plaintiff has made a *prima facie* case, the burden shifts to the defendant to show that there was a legitimate non-discriminatory reason for any actions it took against her.  <u>Fatta v. M & M Properties Management, Inc.</u>, 221 N.C. App. 369, 371-72 (2012).

On June 14, 2018, the Plaintiff fell in a truck stop restroom while in the course and scope of her employment and was injured.  [Doc. 1 at ¶ 37].  On July 2, 2018, she asked Forga about making a workers' compensation claim for her injuries.  [<u>Id.</u> at ¶ 41].  Forga responded "that he did not know what Workers' Compensation is but admonished Plaintiff stating that Worker's Compensation is a 'free ride' and that 'people make claims all the time and there's nothing wrong with them.'"  [<u>Id.</u>].  Two days later, on July 4, 2018, the Plaintiff's employment was terminated.  [<u>Id.</u> at ¶ 42].[2]  The Plaintiff asserts that the Defendants willfully violated the REDA by terminating her employment.  [<u>Id.</u> at ¶ 58].

---

[2] On July 5, 2018, the Plaintiff filed a workers' compensation claim with the North Carolina Industrial Commission for her injuries.  [<u>Id.</u> at ¶ 43].  In August 2019, the Plaintiff initiated a complaint with the North Carolina Department of Labor ("NCDOL") alleging unlawful retaliation and discrimination.  [<u>Id.</u> at ¶ 53].  In accordance with N.C. Gen. Stat. § 95-242(c), the Plaintiff made a written request to the Commissioner of Labor for a Right-To-Sue letter.  [<u>Id.</u> at ¶ 54].  The NCDOL issued Plaintiff a Right-to-Sue letter on April 25, 2019 and an Amended Right-to-Sue letter on June 5, 2019.  [<u>Id.</u> at ¶ 55].  The Plaintiff filed this action within 90 days of April 25, 2019 pursuant to N.C. Gen. Stat. § 95-243(b).  [<u>Id.</u> at ¶ 56].

The Plaintiff has established a *prima facie* REDA violation. The Plaintiff has established the first element of a *prima facie* REDA claim by showing that she filed a claim for worker's compensation benefits with the North Carolina Industrial Commission. <u>Webb v. K.R. Drenth Trucking, Inc.</u>, 780 F. Supp. 2d 409, 413 (W.D.N.C 2011); <u>see</u> <u>also</u> <u>Abels v. Renfro Corp.</u>, 335 N.C. 209, 215 (1993) (holding that the REDA does not require a worker's compensation claim be filed prior to the termination because otherwise "an employer could easily avoid the statute by firing an injured employee before he filed"). The Plaintiff has also established the second and third elements of a *prima facie* REDA claim by showing that she was fired two days after she asked about making a worker's compensation claim. Those allegations are sufficient to show an adverse employment action and a causal connection between the protected activity and the retaliatory action. Because of the default, no legitimate non-discriminatory reason for firing the Plaintiff has been presented. As such, the Plaintiff has established a *prima facie* REDA claim by showing that she was terminated for exercising her rights under the North Carolina Workers' Compensation Act. <u>See</u> <u>Sydell v. Lifemed USA, Inc.</u>, No. 1:16CV1143, 2019 WL 1433646, at *4 (M.D.N.C. Mar. 30, 2019).

The Plaintiff asserts that FCI and Forga should be held jointly and severally liable for her REDA claim. [Doc. 1 at 10]. Under N.C. Gen. Stat. § 95–243, "[a]n employee may only bring an action under [the REDA] when [s]he has been issued a right-to-sue letter by the Commissioner." While the Plaintiff alleges that she received a Right-to-Sue Letter regarding her REDA claim, she does not allege that she was granted a Right-to-Sue letter against any individual, such as Forga. [Id. at ¶¶ 53-56]. There is no factual allegation by the Plaintiff that is deemed admitted by Forga's default establishing that the Plaintiff received a Right-to-Sue Letter allowing her to proceed with a REDA claim against Forga. As such, the Plaintiff lacks the necessary predicate to pursue a REDA claim against Forga individually. In the absence of such factual predicate, the Plaintiff's request that Forga be held jointly and severally liable for her REDA claim must be denied.

Moreover, even if the Plaintiff had received a Right-to-Sue Letter to bring a REDA claim against Forga, the basis offered for holding Forga individually liable is unclear. The Plaintiff's assertion that a manager or employee of a corporate employer can be held personally liable for a REDA violation is a very questionable proposition. [Doc. 9 at 12]. The Plaintiff presents no support for this assertion, except that the Defendants (plural) failed to rebut the Plaintiff's *prima facie* REDA claim by virtue of their default.

13

Ordinarily, one with a claim against a corporate entity can only hold liable an owner, operator, or manager of that corporation by "piercing the corporate veil." The theory of "piercing the corporate veil" allows an injured party "to impose legal liability for a corporation's obligations, or for torts committed by the corporation, upon some other company or individual that controls and dominates a corporation." Green v. Freeman, 367 N.C. 136, 145, 749 S.E.2d 262, 270 (2013). Courts will permit the piercing of the corporate veil "when applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim." State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 439, 666 S.E.2d 107, 112-13 (2008) (citations and internal quotation marks omitted). To pierce the corporate veil, the plaintiff must allege that "the corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State." Green, 367 N.C. at 145, 749 S.E.2d at 270 (citation and internal quotation marks omitted). Applying joint and several liability based on "piercing the corporate veil, is an unusual, exceptional, and specialized theory of relief." United States v. Cochran, 79 F. Supp. 3d 578, 584 (E.D.N.C. 2015). "Piercing the corporate veil is an equitable remedy, and the burden rests with the party

asserting such claim." <u>Kinney Shoe Corp. v. Polan</u>, 939 F.2d 209, 211 (4th Cir. 1991).

The Plaintiff has not presented sufficient allegations to pierce the corporate veil.  Even taken as true, the Plaintiff's allegations fall far short of establishing that FCI was Forga's mere instrumentality or alter ego or that Forga used FCI as a shield for his activities.  <u>Green</u>, 367 N.C. at 145, 749 S.E.2d at 270.  Likewise, the Plaintiff's allegations fail to establish that "applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim." <u>State ex rel. Cooper</u>, 362 N.C. at 439, 666 S.E.2d at 112-13.  Accordingly, the Plaintiff has failed to carry her burden to show that piercing the corporate veil would be appropriate here.

The FLSA and the NCWHA have an express exception to the requirement that a plaintiff must pierce the corporate veil because they both allow claims against "any person acting directly or indirectly in the interests of an employer in relation to any employee."  29 U.S.C. § 203(d); <u>Garcia v. Frog Island Seafood, Inc.</u>, 644 F.Supp.2d 696, 707 (E.D.N.C. 2009).[3]  The

---

[3] As such, employer may include a corporate decision-maker who made the offending wage and hour decisions in addition to the corporation.  <u>Brock v. Hamad</u>, 867 F.2d 804, 808 n. 6 (4th Cir. 1989); <u>Miller v. Colorcraft Printing Co.</u>, No. 3:03cv51–T, 2003 WL 22717592, *4 (W.D.N.C. Oct. 16, 2003).

REDA, however, contains no such provision.[4]  The Plaintiff presents no argument from which the Court can hold that the REDA presents a similar exception to piercing the corporate veil such that the Plaintiff can pursue this REDA claim against Forga.

While Sydell v. Lifemed USA, Inc., No. 1:16CV1143, 2019 WL 1433646, at *4 (M.D.N.C. Mar. 30, 2019) applied joint and several liability for to an individual manager along with the corporate employer for a REDA violation, that case does not provide any rationale for its conclusion.  That Court appears to have treated the assertion of manager liability as a factual allegation admitted by virtue of the defendant's default.  This, however, is a legal conclusion which garners no such deference.  Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001).

In the face of this authority, and without any guidance to the contrary from the appellate Courts of North Carolina, this Court cannot conclude that REDA liability extends to manages or other employees of a defendant's

---

[4] The text of the REDA also weighs against imposing joint and several liability on managers or employees simply because their corporate employer is found liable on a REDA claim.  For example, § 95-243(a) of the REDA states that an employee can sue "where the violation occurred, where the complainant resides, or where the *respondent* resides or has *his* principal place of business." (emphasis added).  By tying the location for the suit to the location of one singular defendant, REDA would seem to contemplate a claim against the single employing entity (whether corporate, individual or otherwise) and not allowing claims against several individuals along with that employing entity stemming from one retaliatory action.

corporate employer.  Accordingly, the Court will not impose joint and several liability on Forga, and therefore FCI will be held solely liable for the REDA violation.  <u>See</u>

For the REDA violation, the Plaintiff requests compensation for lost wages, lost benefits, and other economic losses that were proximately caused by the retaliatory action or discrimination as well as reasonable attorneys' fees and costs.  N.C. Gen. Stat. § 95-243(c)(4).  "Back pay is essentially designed as a 'make whole' remedy, returning the claimant to the financial position he would have been in had the unlawful discrimination not occurred," and consequently "the offending employer is made responsible only for losses suffered by the claimant as a result of the discrimination."  <u>Brady v. Thurston Motor Lines, Inc.</u>, 753 F.2d 1269, 1278 (4th Cir. 1985).  As a result, "[a] plaintiff discriminatorily denied an employment opportunity is ordinarily entitled to an award of back pay dating from the discriminatory event to the date of judgment."  <u>Benson v. Thompson Cadillac-Oldsmobile, Inc.</u>, No. 5:04-CV-237-F(1), 2006 WL 8438575, at *12 (E.D.N.C. July 18, 2006), <u>aff'd</u>, 287 F. App'x 249 (4th Cir. 2008) (citation omitted).  Because the Plaintiff was discriminatorily denied the opportunity to work by FCI, she is entitled to back pay.

The Plaintiff, however, had a duty to mitigate her damages by using "reasonable diligence in finding other suitable employment." Ford Motor Co. v. EEOC, 458 U.S. 219, 231 (1982). "Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, [s]he forfeits [her] right to backpay if [s]he refuses a job substantially equivalent to the one [s]he was denied." Id. As such, the Plaintiff's back pay award must be mitigated by any wages that she has earned following her termination.

In her Motion, the Plaintiff claims that she is owed $31,723.59 in back pay. [Doc. 9 at 16]. At the hearing in this matter, the Plaintiff's counsel updated that figure to $48,375.86 and explained the manner in which the Plaintiff calculates her back pay. That method, however, does not appear to yield the results that the Plaintiff claims based on the Plaintiff's evidence.

The Plaintiff's affidavit estimates that her "average weekly earnings" before her termination, including the work performed but unpaid (travel time and working through breaks), was $674.97 per week. [Doc. 9-1 at 14].[5]

---

[5] Under the FLSA and the NCHWA, where an employer's records are inaccurate or inadequate, an employee may carry her burden of proving unpaid wages if she produced evidence sufficient to support a showing of the amount and extent of work. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded by statute on other grounds; see also Cooper v. Creative Homes of Distinction, LLC, 152 N.C. App. 718 (2002).

There are ninety weeks and three business days between July 4, 2018, when the Plaintiff was terminated, and March 30, 2020, the date of this judgment.[6] If the Plaintiff had made $674.97 per week over those ninety weeks and three business days, she would have made $61,152.28.

That number, however, must be mitigated by any earnings that the Plaintiff accrued during that time period. According to the Plaintiff, her work history following her termination is as follows:

- U-Haul at a rate of $18.00 per hour for twenty-five hours per week from July 26, 2018 through November 16, 2018 (fifteen weeks and three business days) for a total of $7,020.00;

- JLS Builders at a rate of $14.50 per hour for thirty hours for a total of $435.00;

- Lowe's at a rate of $14.00 per hour for sixteen hours for a total of $224.00;

- Isgett Distributors at a rate of $17.00 per hour for between forty-five and fifty hours per week[7] from November 16, 2018 through

---

[6] The Plaintiff is entitled to back pay "from the discriminatory event to the date of judgment." Benson v. Thompson Cadillac-Oldsmobile, Inc., No. 5:04-CV-237-F(1), 2006 WL 8438575, at *12 (E.D.N.C. July 18, 2006).

[7] Because the affidavit filed by the Plaintiff proves only that she worked forty-five hours per week, the Court uses that number for its calculations of the Plaintiff's mitigation of damages.

January 7, 2019 (seven weeks and one business day) for a total of $5,508.00.

[Doc. 9-1 at 2-3]. As such, the Court calculates that the Plaintiff has earned $13,187.00 in wages since her termination. The Plaintiff's affidavit states that she has been trying to find employment but has not been employed since she left Isgett Distributors on January 7, 2019. [Id. at 3]. Based on the evidence submitted by the Plaintiff, the Court calculates that she should be awarded $61,152.28. in back pay, mitigated by the $13,187.00 that she has earned since the date of her termination, for a total of $47,965.28.[8]

The Plaintiff argues that her back pay award should be trebled because the REDA violation was willful. [Doc. 1 at 9]. Treble damages can be awarded only if "the court finds that the employee was injured by a willful violation of G.S. 95-241." N.C. Gen. Stat § 95-243(c). A willful REDA violation occurs where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Morris v. Scenera Research, LLC, 368 N.C. 857, 788 S.E.2d 154, 160–61 (2016) (internal quotation marks and brackets omitted).

---

[8] The mitigation offset is applied to REDA damages prior to the trebling, if any, of such damages. Harris v. Blue Ridge Health Servs., Inc., 388 F. Supp. 3d 633, 644 (M.D.N.C. 2019).

With regard to the willfulness of the actions, the Plaintiff alleges that "[a]t the time of Plaintiff's termination, Forga knew that Plaintiff had sustained injuries from a fall while at work, had inquired multiple times about workers' compensation in relation to her fall, and thus he anticipated that Plaintiff intended to file a good faith workers' compensation claim and terminated her employment as a result." [Id. at ¶ 42, 58]. Those allegations, taken as true by virtue of the default, establish that he "knew or showed reckless disregard" for whether such conduct violated the REDA and therefore willfully violated the REDA. As such, the amount of the Plaintiff's REDA damages will be trebled from $47,965.28 to $143,895.84.

### 3. Claim for Compensatory Damages

In her brief, the Plaintiff further requests an additional $10,000.00 in compensatory damages. [Doc. 9 at 16]. At the hearing on the Plaintiff's motion, however, the Plaintiff's counsel stated that her claim for compensatory damages was an alternative remedy to her WDPP claim. Since she elects damages for her REDA claim rather than her WDPP claim, this claim for damages is forgone. See Driskell v. Summit Contracting Grp., Inc., 325 F. Supp. 3d 665, 678 (W.D.N.C. 2018), appeal dismissed, No. 18-1855, 2018 WL 7140958 (4th Cir. Nov. 6, 2018) (stating that a "Plaintiff may elect to recover under either [her] REDA claim or [her] WDPP claim, but not

both, so as to avoid running afoul of the prohibition of double recovery."). Because the Plaintiff elects to receive back pay under REDA, she will not receive any additional award of compensatory damages.

### 4.    Prejudgment Interest

The Plaintiff further argues that prejudgment interest should be awarded at the North Carolina statutory rate of eight percent per annum. [Doc. 9 at 16]; <u>see</u> <u>also</u> N.C. Gen. Stat. §§ 24–1, 24–5.

"The Fourth Circuit has recognized that other circuits have held that courts must apply the law of the forum to questions involving prejudgment interest in diversity cases." <u>Driskell</u>, 325 F. Supp. 3d at 679-80 (citing <u>United States v. Dollar Rent A Car Sys., Inc.</u>, 712 F.2d 938, 940 (4th Cir. 1983)).  In North Carolina, the legislature has enacted a statute governing prejudgment interest that provides "[i]n an action other than contract, any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied."  N.C. Gen. Stat. § 24-5(b).  The Fourth Circuit has construed N.C. Gen. Stat. § 24-5(b) as a mandatory provision. <u>Castles Auto & Truck Servs., Inc. v. Exxon Corp.</u>, 16 Fed. App'x. 163, 168 (4th Cir. 2001) (remanding to award prejudgment interest because "the statute is unambiguously mandatory.").  Accordingly, the Court will award prejudgment interest on the

Plaintiff's damages under the REDA and the NCWHA at the state of North Carolina's legal interest rate of eight percent for the period from July 4, 2018, to March 30, 2020.  N.C. Gen. Stat. § 24-1.

While § 24-5(b) is a mandatory provision, it only applies to the "portion of a money judgment designated by the fact finder as compensatory damages."  N.C. Gen. Stat. § 24-5(b).  The Fourth Circuit has noted that treble damages under North Carolina law are best defined as statutory damages, not compensatory damages.  <u>Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.</u>, 991 F.2d 141, 148 (4th Cir. 1993) (noting that treble damages for unfair and deceptive trade practices under North Carolina law are awarded "not to compensate the wronged party, but to deter unwanted trade practices.").  Likewise, the North Carolina Court of Appeals has held that prejudgment interest should only attach to the actual damages, not the treble damages.  <u>Sampson–Bladen Oil Co. v. Walters</u>, 86 N.C. App. 173, 179, 356 S.E.2d 805, 809, <u>disc. rev. denied</u>, 321 N.C. 121, 361 S.E.2d 597 (1987).  Other courts also have held that prejudgment interest awards should not attach to treble damages.  <u>Mkt. Am., Inc. v. Rossi</u>, 104 F. Supp. 2d 606, 609 (M.D.N.C.), <u>aff'd</u>, 238 F.3d 413 (4th Cir. 2000); <u>see</u> <u>also</u> <u>Black v. F & S, LLC</u>, No. CIV. 502CV105-V, 2008 WL 5110728, at *6 (W.D.N.C. Dec. 2, 2008) (Voorhees, J.).  As such, the Court will award prejudgment

interest to the back pay that is due to the Plaintiff under the REDA before trebling that amount.

With regard to prejudgment interest for the FLSA violation, "federal law controls the issuance of prejudgment interest awarded on federal claims." Fox v. Fox, 167 F.3d 880, 884 (4th Cir. 1999) (citing City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 194 (1995)). "In Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 715–16 (1945), the United States Supreme Court held that the FLSA's liquidated damages were provided in lieu of calculating the costs of delay—which is the function of prejudgment interest—and therefore that a claimant could not recover both prejudgment interest and liquidated damages." Hamilton v. 1st Source Bank, 895 F.2d 159, 166 (4th Cir. 1990). Because the Plaintiff will recover liquidated damages under the FLSA, she cannot also recover prejudgment interest for her damages under the FLSA.[9]

---

[9] The Plaintiff can, however, recover prejudgment interest on her liquidated damages under the NCWHA. Section 95-25.22(a) of the NCWHA states that a violating employer will be liable for the "unpaid minimum wages, their unpaid overtime compensation, or their unpaid amounts due . . . plus interest at the legal rate set forth in G.S. 24-1, from the date each amount first came due." Section 95-25.22(b), the liquidated damages provision of the NCWHA, states that "in addition to the amounts awarded pursuant to subsection (a) of this section, the court shall award liquidated damages in an amount equal to the amount found to be due as provided in subsection (a) of this section." Because the NCWHA provides that the amount of damages in subsection (a) includes interest, the liquidated damages under subsection (b) also includes interest.

Therefore, the Plaintiff can recover prejudgment interest on the $1,477.50 in damages that she is due under the NCWHA and the $47,965.28 in back pay that she is due under the REDA. That interest will be calculated at a rate of eight percent from July 4, 2018 through March 30, 2020. Accordingly, the Plaintiff will recover $205.64 in prejudgment interest on her NCWHA damages and $6,675.72 in prejudgment interest on her REDA back pay.

### 5. Post-Judgment Interest

As the prevailing party, the Plaintiff is also entitled to an award of post-judgment interest pursuant to 28 U.S.C. § 1961(a) (allowing post-judgment interest "on any money judgment in a civil case recovered in a district court").[10]

### 6. NCWHA, FLSA, and REDA Claim for Attorneys' Fees

The Plaintiff also requests attorneys' fees under the NCWHA the FLSA, and REDA. [Doc. 9 at 16].

The Court may order an employer who violates the minimum wage or wage payment provisions of the NCWHA to pay a plaintiff "costs and fees of the action and reasonable attorneys' fees." N.C. Gen Stat. § 95-25.22(d).

---

[10] Post-judgment interest is to be calculated on the full amount of the award including prejudgment interest. Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1029 (4th Cir. 1993) (en banc).

Likewise, Section 216(b) of the FLSA states that a Court should, "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In addition, reasonable costs and attorneys' fees may be awarded to a plaintiff against for a REDA violation. N.C. Gen. Stat. § 95-243(c). Because the Court finds that FCI and Forga are liable to the Plaintiff under the FLSA and the NCWHA, the Court will award the Plaintiff her reasonable costs and attorneys' fees for both of those claims. The Court also will award the Plaintiff her reasonable costs and attorneys' fees from the REDA claim against FCI alone.

In her motion, the Plaintiff requests attorneys' fees under the NCWHA the FLSA, and REDA in the amount of $19,392.50 and costs in the amount of $400.00. [Doc. 9 at 16]. At the hearing on the Plaintiff's motion, her counsel stated that he had incurred $21,553.50 in fees to date. The Plaintiff's counsel, however, has submitted no evidence to the Court regarding fees or costs. Moreover, the Plaintiff's counsel has not attempted to divide the fees arising from the work performed pursuing the FLSA and NCWHA claims, which can be collected from FCI and Forga, from the work performed pursuing the REDA claims, which can only be collected from FCI. Accordingly, the Court cannot make such an award on this record and the

Plaintiff's request for attorneys' fees will be denied without prejudice. The Plaintiff shall have ten (10) days from the date of this Order to renew her motion and submit evidence supporting the request for an award of attorney's fees.

## IV. CONCLUSION

Based on the allegations and evidence submitted by the Plaintiff, FCI is liable to the Plaintiff for $47,965.28 in back pay under REDA. In addition, FCI is liable to the Plaintiff for prejudgment interest on the Plaintiff's back pay under the REDA a rate of eight percent from July 4, 2018 through March 30, 2020, which amounts to $6,675.72. The Plaintiff's back pay, without prejudgment interest, will be trebled because FCI's violation of REDA was willful and will therefore amount to $143,895.84. Accordingly, FCI will be solely liable for $150,571.56 in damages for the REDA violation.

The Defendants are jointly and severally liable to the Plaintiff for $738.75 in regular unpaid wages and an additional $738.75 in liquidated damages under the NCWHA; $742.50 in overtime unpaid wages and an additional $742.50 in liquidated damages under the FLSA, which totals $2,962.50. In addition, FCI and Forga are jointly and severally liable to the Plaintiff for prejudgment interest on the Plaintiff's damages under the NCWHA at a rate of eight percent from July 4, 2018 through March 30, 2020,

which amounts to $205.64.  As such, the Defendants are jointly and severally liable to the Plaintiff for $3,168.14 in damages for the FLSA and NCWHA violations.

Accordingly, FCI is liable to the Plaintiff in the amount of $150,571.56, subject to post-judgment interest and FCI and Forga are jointly and severally liable to the Plaintiff in the amount of $3,168.14, subject to post-judgment interest.  While the Plaintiff may be entitled to attorney's fees, the Plaintiff's counsel failed to submit appropriate supporting evidence to support an award of attorney's fees.  As such, the Plaintiff's request for attorney's fees is denied without prejudice and the Plaintiff shall have ten (10) days from the entry of this Order to submit evidence supporting the request for an award of attorney's fees.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Entry of Default Judgment [Doc. 9] is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) The Plaintiff shall have and recover of FCI a judgment of $150,571.56 in back pay, treble damages and prejudgment interest under N.C. Gen. Stat § 95-243(c), subject to post-judgment interest.

(2) The Plaintiff shall have and recover of FCI and Forga, jointly and severally a judgment of $3,168.14 in unpaid wages, liquidated damages, and prejudgment interest under N.C. Gen. Stat. § 95–25.22, and unpaid wages and liquidated damages under 29 U.S.C. § 216(b)

(3) The Plaintiff's Motion is **DENIED** with respect to her request for compensatory damages.  The Motion is also **DENIED** without prejudice with respect to the Plaintiff's request for attorney's fees. The Plaintiff shall have ten (10) days from the entry of this Order to submit evidence supporting the request for an award of attorney's fees.

**IT IS SO ORDERED.**

Signed: March 30, 2020

Martin Reidinger
United States District Judge